UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RANDALL ANTHONY AND KELLIE ANTHONY | CVIVL ACTION NO. 15-2691 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| PETROHAWK ENERGY CORPORATION | MAGISTRATE JUDGE MARK HORNSBY |

**MEMORANDUM RULING**

Before the Court are: (1) Defendant Petrohawk Energy Corporation's ("Petrohawk") Motion for Summary Judgment (Record Document 19) regarding Plaintiffs Randall Anthony and Kellie Anthony's, individually and on behalf of their minor children, Keela Anthony and Sophea Anthony, ("Plaintiffs") claims of vicarious liability and negligent employment; and (2) Third Party Defendant Princeton Excess and Surplus Lines Insurance Company's ("Princeton") Motion for Summary Judgment (Record Document 15) regarding claims by Third Party Defendant, Petrohawk, pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 56. For the reasons which follow, both Petrohawk and Princeton's Motions for Summary Judgment are **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 4, 2012, Kellie Anthony was driving her minivan with her two daughters in the backseats when her vehicle was struck or hit by an 18-wheeler being operated by Travoski Powell ("Powell"). See Record Document 1 at 2. The 18-wheeler failed to stop at a stop sign and entered Anthony's lane of travel. See id. Kellie Anthony and her two daughters suffered significant injuries including brain injuries and over twenty broken bones. See Record Document 24 at 5.

1

This is Plaintiffs' second lawsuit on the same auto accident. In the first suit filed in state court, Plaintiffs sued the other driver, Powell, his employer, R & S Trucking, LLC ("R & S"), and R & S's insurers, Zurich American Insurance Company ("Zurich") and Princeton (collectively "state court defendants"). See Record Document 15-2 at 8. Plaintiffs agreed to settle that suit, but a dispute arose as to whether the settlement included Petrohawk. Plaintiffs demanded the following language in the agreement:[1]

> RESERVATION OF RIGHTS. PLAINTIFFS specifically reserve any and all rights, claims, and/or causes of action they may have against any person or entity not specifically identified herein as a RELEASED PARTIES, including but not limited to, STEVEN EAVES and PETROHAWK ENERGY CORPORATION and their respective insurers. Nothing herein shall be construed to effect PLAINTIFFS' rights to assert any claims or causes of action against any person or entity not specifically released herein.

The state court defendants refused and filed a Motion to Enforce, maintaining the settlement included Petrohawk. See id. at 11. The matter came on for hearing before Judge Ramon Lafitte, and the parties discussed extensively whether the settlement covered everybody, named and unnamed. Plaintiffs' counsel mentioned Petrohawk by name at the hearing. See Record Document 15-3 at 15. After hearing both arguments, Judge Lafitte agreed with the state court defendants:[2]

> [W]hen you say any and all claims, that includes everyone that could have been brought in this litigation. Whether they were brought in or not, you can't say, well, we compromise all the claims except the ones that were actually named. If that's what you meant, that's what it should have said, but you indicated any and all claims arising out of this litigation. That means every claim that could have been brought, whether brought or not, in my opinion.

---

[1] Record Document 19-1 at 6.
[2] Id. at 17-18.

Judge Lafitte specifically ruled that the release covered everybody, including Steven Eaves, Petrohawk, and anybody else that could be associated with the wreck:

> MR. BIENVENU: Judge, I do need a clarification, thought, because I want to make sure I follow you. In your last reference you said, you used the name Stephen Eaves, but it's my understanding that the ruling is anybody that could have been sued in this lawsuit?
>
> THE COURT: You all used his name several times and that's the only name that was brought up.
>
> MR. BIENVENU: Also had another party listed and assume that has the same effect.[3]
>
> THE COURT: As I mentioned, all claims, everybody –
>
> MR. BIENVENU: Thank you.
>
> THE COURT: --named and unnamed. This resolves everything. [4]

Following the state court's order, the parties executed the final "Receipt, Release and Settlement Agreement" ("the Release") on October 6, 2015. See id. at 34. The Release reads, in pertinent part:

> PLAINTIFFS do hereby for themselves, their successors, heirs, and assigns, forever compromise, resolve, release, and dismiss any and all claims arising out of the accident and the above-captioned and mentioned litigation, and do hereby further acquit and discharge DEFENDANTS, their successors, heirs, assigns, officers, directors, members, managers, parents, subsidiary and related corporations, stockholders, past and present agents, servants, employees, insurers and insureds, subject to PLAINTIFFS' right to appeal the Court's ruling on the Motion to Enforce Settlement as more fully set forth below. [5]

After the parties executed the Release, the state court, upon motion of Plaintiffs, dismissed all Plaintiffs' claims against the named defendants with prejudice. Plaintiffs

---

[3] The other party is Petrohawk.
[4] Id. at 28.
[5] Id.

declined to appeal the state court's enforcement of the settlement, accepting a $3.95 million settlement. The applicable appellate deadlines have since expired.

On November 13, 2015, Plaintiffs filed suit in this Court regarding the same motor vehicle accident which occurred on February 4, 2012, against Petrohawk alleging two causes of action: (1) Petrohawk is vicariously liable for Powell and R & S's actions under Louisiana Civil Code Article 2320; and (2) Petrohawk was independently negligent in its employment and/or retention of R & S. See Record Document 1. Plaintiffs allege Petrohawk employed R & S to dispose of saltwater from oil and gas wells throughout Louisiana, and that Powell had collected saltwater from a Petrohawk well immediately prior to the crash. See id. at 3. Plaintiffs allege R & S had a history of safety regulation violations and Petrohawk was negligent in retaining R & S. See id.

Petrohawk filed a Third Party Demand against Zurich and Princeton on March 10, 2016. See Record Document 5. Therein, Petrohawk claims that it is an insured of both Zurich and Princeton, and argues that if it is found to be liable to Plaintiffs, it is entitled to coverage pursuant to the Zurich Policy, or the Princeton Policy, to the extent the Zurich policy is exhausted. See id. at 4. Upon finding that the Zurich Policy had in fact been exhausted, Petrohawk dismissed Zurich from the instant Lawsuit on April 7, 2016. See Record Document 10.

Princeton filed its Motion for Summary Judgment requesting this Court to dismiss the claims asserted by Third Party Plaintiff, Petrohawk, since Plaintiffs have no claims against Petrohawk. See Record Document 15. Petrohawk filed its Motion for Summary

Judgment to dismiss Plaintiffs' claims on the grounds of res judicata, and, in the alternative, prescription.[6] See Record Document 19.

## LAW AND ANALYSIS

I.     **LEGAL STANDARDS**

    A. **SUMMARY JUDGMENT**

Rule 56 of the F.R.C.P. governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record, including . . . affidavits . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." F.R.C.P. 56(c)(1)(A) and (B). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." F.R.C.P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of

---

[6] Petrohawk's claim of res judicata is proper; therefore, the Court will not address the prescription issue.

going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See Celotex, 477 U.S. at 325, 106 S. Ct. at 2554; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075.

Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." Id. Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.

### B. THE FULL FAITH AND CREDIT STATUTE

The Full Faith and Credit statute mandates that the "judicial proceedings" of any State "shall have the same full faith and credit in every court within the United States … as they have by law or usage in the courts of such State … from which they are taken." Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373, 116 S.Ct. 873, 877 (1996), citing 28 U.S.C. § 1738. Federal courts may not "employ their own rules … in determining the effect of state judgments," but must "accept the rules chosen by the State from which the judgment is taken." Id.

### C. RES JUDICATA

In Louisiana, the essential elements of res judicata are found in La. R.S. 13:4231, which provides, in pertinent part:

6

> "Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment."

Louisiana courts have established that the following five elements must be established for a finding that an action is precluded by res judicata: "(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation." Chevron U.S.A., Inc. v. State, 2007-2469 (La. 9/8/08), 993 So. 2d 187, 194.

## II. ANALYSIS

### A. RES JUDICATA

Plaintiffs do not dispute the settlement and judgment of the state court action was a valid final judgment. See Record Document 24 at 7. Plaintiffs agree the vicarious liability claim and negligent employment claim asserted against Petrohawk existed at the time of the state court judgment and arise out of the same transaction or occurrence that was the subject matter of the state court action. See id. Thus, four of the five res judicata factors are present. The issue in this case is whether the instant action consists of the "same parties" to the state court action. Plaintiffs are obviously the same in both cases. On the

other side of the case, the defendants in the 2014 state court action were Powell, R & S, Zurich, and Princeton. The same defendants were not named in the instant action, however, as Plaintiffs only named Petrohawk.

The preclusive effect of a judgment may bind nonparties who are deemed the "privies" of the parties in these limited circumstances: (1) the nonparty is a successor in interest of a party; (2) the nonparty controlled the prior litigation; or (3) the nonparty's interests were adequately represented by a party to the action who may be considered the virtual representative of the nonparty because of the interests of the party and the nonparty are so closely aligned. See Gilbert v. Visione, 30,204 (La.App. 2 Cir. 2/25/98), 708 So.2d 496. The concepts of control and virtual representation are narrowly construed. See id. at 500.

The same parties test is satisfied when "the interests of the additional parties in the instant litigation…are closely aligned with the interests of the [named] parties in the [prior] litigation." Forum For Equal PAC v. McKeithen, 2004-2551 (La. 1/19/05); 893 So.2d 738, 745. The state court defendants refused to consent to Plaintiffs' attempt to include a reservation of rights clause against Petrohawk, specifically referring to Petrohawk in its motion to enforce and at the hearing on the motion. State court defendants argued on behalf of Petrohawk and were successful in securing its release of liability. This successful attempt clearly shows the state court defendants' interests were closely aligned with Petrohawk. Petrohawk's argument of its "closely aligned" interests with Princeton, a state court defendant and insurer, is strengthened by the fact that Princeton was brought into the instant litigation as a Third Party Defendant.

Petrohawk can also find privity in its relationship with Zurich and Princeton. An insurer and its insured share the same quality as parties for purposes of res judicata. See Hannie v. Wall, 569 So.2d 1044, 1050 (La. App. 3 Cir. 1990) ("For res judicata purposes, the insured and the insurer not only share the same quality as parties, but in essence their identities are virtually merged into one, to the extent of policy limits"). The Zurich policy provides an omnibus definition of "insured," and specifically includes "[a]nyone liable for the conduct of an insured described above but only to the extent of that liability." Record Document 5 at 3. Petrohawk asserts that as a follow form excess policy, the Princeton policy includes as insureds, "[a]ny person or organization (other than you) included as an insured in the Scheduled Underlying Insurance but NOT for broader coverage then is available to them under the Scheduled Underlying Insurance." Id. at 4. Thus, since Plaintiffs allege Petrohawk is vicariously liable for R & S's conduct, it qualifies as an insured under both the Zurich and Princeton policies. Since both Zurich and Princeton were parties in the state court action, Petrohawk is found to be in privity.

Plaintiffs attempt to distinguish Hannie from the instant case by citing Rodriguez v. Louisiana Tank, Inc., 940200 (La. App. 1 Cir. 6/23/95), 657 So. 2d 1363. In facts similar to this case, the court in Rodriguez distinguished Hannie in dismissing the defendant's res judicata claim because the insurer in Hannie was specifically named in the release. See id. at 1368, n. 10. Plaintiffs suggest because Petrohawk was not specifically named in the Release, this Court should dismiss its res judicata claim. Although not named specifically in the Release, Petrohawk was specifically named at the hearing by Plaintiffs' counsel. See Record Document 15-3 at 15. Judge Lafitte ruled the Release covered everybody, "named and unnamed." Id. at 28. Plaintiffs, having full knowledge of this ruling,

signed the Release anyway. Therefore, the Court finds Hannie applicable due to the Plaintiffs' specific knowledge that Petrohawk was protected in the Release. Further, in Rodriguez the court was interpreting the language of the settlement agreement in deciding whether the compromise itself provided a res judicata claim. See id. at 1369. Here, the scope of the settlement agreement has already been determined by Judge Lafitte. The question is not whether Petrohawk was in privity to the compromise, but whether Petrohawk was in privity to Judge Lafitte's final judgment. Therefore, Rodriguez is irrelevant to the instant case. Louisiana courts have consistently found that an insurer and insured share the same qualities as parties. See Hannie, 569 So.2d at 1050; Arthur v. Zapata Haynie Corp., 95-956 (La. App. 3 Cir. 1/22/97), 690 So. 2d 86, 88; Roland v. Owens, 00-1846 (La. App. 5 Cir. 4/24/01), 786 So. 2d 167, 170.

Plaintiffs rely heavily on Hines v. Smith, 44,285 (La. App. 2 Cir. 8/12/09), 16 So. 3d 1234, to support their argument that Petrohawk does not qualify as a party. In Hines, the plaintiff was injured as a result of medical malpractice arising from an emergency room visit. See id. at 1236. The plaintiff entered into a settlement agreement with the hospital and executed a release in which the plaintiff settled "any and all claims and demands made by them and/or rights and causes of action arising out of the January 14, 2006 visit to St. Francis Emergency Room…." Id. at 1238. The plaintiff then filed suit against the emergency room physician who was not an employee of the hospital. See id. at 1243. The physician filed an exception of res judicata arguing plaintiff's settlement with the hospital barred any claims against her. See id. at 1236. After the trial court granted the exception, the Court of Appeal reversed. See id. at 1243.

Plaintiffs again rely on a case where the question was whether the compromise itself provided a res judicata claim, and not a final judgment enforcing a settlement. Regardless, Plaintiffs' argument fails to sway the Court that Petrohawk should not be considered a party. Plaintiffs cite two reasons why the court in Hines did not consider the physician and hospital to be same parties: (1) the physician did not participate in the negotiations and (2) no potential rights or claims against the physician were mentioned in the release. See Record Document 24 at 11. But, Plaintiffs fail to cite the court's other reasons: the physician was not employed by the hospital and had no contractual relationship with the hospital. See Hines, 16 So. 3d at 1242. These two reasons distinguish Hines from the instant case. Petrohawk, as alleged by Plaintiffs, is the employer of R & S and Powell, thus creating a contractual relationship between the two parties.

The Court finds Petrohawk has convincingly established its interests are closely aligned with those of the state court defendants and its insurer-insured relationship with both Zurich and Princeton. Accordingly, Petrohawk is considered to be in privity to the state court action.

"Under the claim preclusion part of res judicata, a final judgment of dismissal with prejudice precludes the parties from relitigating matters that were or could have been raised in the first action." Classen v. Hofmann, 06-560 (La. App. 5 Cir. 11/28/06), 947 So. 2d 76, 81, citing Blanchard v. ABC Ins. Co., 38,005 (La.App. 2 Cir. 3/3/04), 867 So.2d 901. "[O]nce a court decides an issue of fact or law necessary to its judgment, that decision precludes re-litigation of the same issue in a different cause of action between the same parties." Segal v. Smith, Jones & Fawer, L.L. P., 2002-1448 (La. App. 4 Cir.

1/29/03), 838 So. 2d 62, 65. The issue presented by the instant action is whether the Release protects Petrohawk from "any and all" claims by Plaintiffs, an issue that was raised and litigated in the state court enforcement action. The issue has already been decided by Judge Lafitte. Thus, the state court's decision that the settlement agreement does in fact release Petrohawk from liability precludes Plaintiffs' relitigation of the same issue in their vicarious liability and negligent employment causes of action.

### B. RELEASE AGREEMENT

Assuming arguendo that Petrohawk fails to meet the five factor test for its res judicata claim, Plaintiffs' claims fall squarely in the scope of claims barred by the Release Agreement. The language of the Release Agreement specifically "acquits and discharge[s]" all state court defendants and their "insurers and insureds." Record Document 15-3 at 35-36. Zurich issued a primary policy to R & S; the policy includes as insureds not only R & S, but "anyone liable for the conduct of an insured described above but only to the extent of that liability." Record Document 5 at 3. Princeton issued a Commercial Excess Follow Form policy to R & S which includes as insureds "any person or organization (other than you) included as an insured in the Scheduled Underlying Insurance but NOT for broader coverage then is available to them under the Scheduled Underlying Insurance." Id. at 4.

Plaintiffs' Complaint asserts claims against Petrohawk for the vicarious liability of R & S and Powell. Taking Plaintiffs' allegations are true, Petrohawk would qualify as an insured. R & S was a covered insured under the Zurich and Princeton policies. Since Plaintiffs attempt to pass liability onto Petrohawk for the conduct of R & S, it is clear that Petrohawk qualifies as an insured under both the Zurich and Princeton policies.

The Release Agreement released "insurers and insureds" from "any and all claims arising out of the accident." Record Document 15-3 at 35. It is undisputed that Plaintiffs' claims are entirely related to the accident. "Plaintiffs agree the vicarious liability claim and negligent employment claim … arise out of the same transaction or occurrence…." Record Document 24 at 7. Plaintiffs, however, argue the compromise with Petrohawk lacked intent stating, "A compromise regulates only the differences which appear clearly comprehended therein by the intention of the parties, whether it be explained in general or particular manner, and does not extend to difference which the parties never intended to include." Id. at 17, citing Ortego v. State, Dep't of Transp. & Dev., 96-1322 (La. 2/25/97), 689 So. 2d 1358, 1363. Plaintiffs argue it was never their intent to release Petrohawk when they settled the state court action. "Planitffs would never have imagined that their claim against an entity that was not a party to the litigation and not mentioned in the Release would have been affected by the settlement." Record Document 24 at 13.

However, Louisiana jurisprudence contradicts Plaintiffs' argument. The lack of intention to release all defendants, when the release plainly states all parties are released, is not sufficient to raise a genuine issue of material fact on such a point. Hudson v. Progressive Sec. Ins. Co., 43,857 (La. App. 2 Cir. 12/10/08), 1 So. 3d 627, 634. Here, Plaintiffs' argument has even less merit since the Plaintiffs signed the Release after the state court ruled the language of the Release would release all claims against Petrohawk. Plainitffs knew what they were signing. Plaintiffs released Petrohawk from "any and all claims" arising from the accident when they signed the Release; therefore, Plaintiffs are barred from asserting their vicarious liability and negligent employment claim against Petrohawk.

### C. PETROHAWK'S THIRD PARTY CLAIM AGAINST PRINCETON

A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. See Fed. R. Civ. P. 14(a)(1). Petrohawk filed its Third Party Demand against Princeton alleging it is Princeton's omnibus insured. See Record Document 5. However, since Plaintiffs do not have a viable claim against Petrohawk, Princeton cannot be found liable to Petrohawk. Accordingly, Petrohawk's Third Party Demand is rendered moot.

### CONCLUSION

The Court finds the granting of Petrohawk's Motion for Summary Judgment appropriate because Petrohawk meets the requirements to assert res judicata against Plaintiffs claims: (1) the state court judgment was valid; (2) the judgment is final; (3) Petrohawk was in privity to the state court action; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the same transaction or occurrence that was the subject matter of the first litigation. The doctrine of res judicata bars Plaintiffs from asserting their vicarious liability and negligent employment claims against Petrohawk. Accordingly, Petrohawk's Motion for Summary Judgment is **GRANTED** and Plaintiffs' claims are **DISMISSED**.

Because Plaintiffs do not have a viable claim against Petrohawk, Petrohawk's Third Party Demand against Princeton is rendered moot. Accordingly, Princeton's Motion for Summary Judgment is **GRANTED** and Petrohawk's Third Party Demand is **DISMISSED WITHOUT PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this the 26th day of September, 2017.

                                                                                     _____
                                                                                      S. MAURICE HICKS, JR.
                                                                         UNITED STATES DISTRICT JUDGE